UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ALAN THOMAS,

                              Plaintiff,

               v.                                      9:05-CV-638
                                                                          (FJS/DRH)

ANTHONY J. AMMUCCI, General Counsel;
A. BABCOCK, S.C.C.; R. STILES, S.C.C.;
MR. KNAPP, C.C.; THERESA KNAPP-DAVID,
Dir. of Classification; RICHARD ROY, Inspector
General, Dept. of Corrections; JUSTINE
TAYLOR, Superintendent; SARA CAMPBELL,
S.U. Teacher; and MS. MCINTOSH, C. C.,

                              Defendants.

---

**APPEARANCES**                                           **OF COUNSEL**

ALAN THOMAS
04-R-2782
Gouverneur Correctional Facility
P.O. Box 480
Gouverneur, New York 13642
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**                      **DAVID FRUCHTER, AAG**
**STATE ATTORNEY GENERAL**
Department of Law
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Chief Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Currently before the Court is Plaintiff's motion for a temporary restraining order. *See*

Dkt. No. 6. Defendants filed papers in opposition to this motion. *See* Dkt. No. 31.

## II. BACKGROUND

In his amended complaint, Plaintiff asserts that he entered Ulster Correctional Facility on July 7, 2004. *See* Dkt. No. 10, Amended Complaint, at ¶ 20. Shortly thereafter, on July 16, 2004, Defendant Babcock referred Plaintiff's case for consideration as a Central Monitoring Case ("CMC"). *See id.* at ¶ 21. On August 10, 2004, Plaintiff received notice that he had been designated as a CMC pursuant to New York State Department of Correctional Services ("DOCS") Directive 0701 and was advised of his right to appeal. Plaintiff unsuccessfully pursued his appeals in accordance with DOCS Directive 0701. *See* Dkt. No. 1, Original Complaint, Exhibits Attached thereto. Plaintiff alleged in his appeals that the pre-sentence report upon which DOCS relied to make its determination was inaccurate. Plaintiff was advised that he needed to address any inaccuracies in the report with the New York City Department of Probation, which had issued the report, and to seek issuance of an amended report from that agency.

Plaintiff further alleges that from July 6, 2004, through October 28, 2004, he was "denied merit time program participation, dental care, medical diagnostic referrals, restrictive packages, commisary [sic], visits, law library access, monitored mail and phone calls." *See* Dkt. No. 10, Amended Complaint, at ¶ 29. However, Plaintiff does not set forth the impetus for these alleged deprivations.

Finally, Plaintiff asserts that Defendant Knapp treated him differently than other new arrivals at Gouverneur Correctional Facility from October 28, 2004, through the present, "in

terms of case management . . . [s]uch as program placement[,] program needs and assessments." *See id.* at ¶ 31. Moreover, Plaintiff contends that Defendant Campbell filed a false misbehavior report against him in retaliation for his exercise of his First Amendment rights in her classroom. *See id.* at ¶ 33. Plaintiff also claims that Defendant McIntosh "denied [his] program (vocational) as a merit time earned program in that she treated [him] different than other inmates similarly situated . . . ." *See id.* at ¶ 34.

As a result of these alleged actions, Plaintiff seeks an Order removing the CMC designation, restoring him to minimum security status, directing his transfer to a minimum security prison, requiring Defendants to grant him credit in the merit time program for the period from July 16, 2004, through October 28, 2004, and requiring Defendants to comply with DOCS Directives 4806 and 4790, as well as monetary damages. *See id.* at ¶¶ 37-39.

### III. DISCUSSION

**A.    Allegations in support of Plaintiff's motion for a temporary restraining order**

In support of his motion for a temporary restraining order, Plaintiff alleges that the change in his security classification from "minimum" to "medium" has deprived him of "a highly significant privilege, and worsen[ed] [his] condition of confinement in a most serious and substantial way." *See* Dkt. No. 6, Affidavit of Alan Thomas, sworn to June 20, 2005 ("Thomas Aff."), at ¶ 4. Specifically, Plaintiff asserts that this change in classification terminated his eligibility to participate in programs requiring a minimum security status. *See id.* at ¶ 6. Plaintiff also claims that he has been denied his constitutional right to due process in this process and that such a deprivation establishes irreparable harm. *See id.* at ¶ 9. As a result, Plaintiff asks the

Court to require Defendants to restore his minimum security status and transfer him to a minimum security prison, to grant him credit for time spent in a merit time program, to remove him from the CMC list, and to restore to him all privileges that he has been denied or which have been curtailed.  *See id.* at "Prayer for Relief."

Defendants oppose this motion and have provided the Court with a copy of the Directives at issue as well as the Affidavits of Douglas Botsford, Classification Analyst, and Defendant Donita McIntosh, Plaintiff's Correction Counselor, which explain the Directives and the basis for Plaintiff's classification, his CMC status, and his eligibility for merit time.  *See* Dkt. No. 31.

In his Affidavit, Mr. Botsford states that an inmate's security classification and his CMC status are two separate determinations, for which two different DOCS Divisions are responsible. *See* Affidavit of Douglas Botsford, sworn to November 18, 2005 ("Botsford Aff."), at ¶ 5.  The DOCS Inspector General makes the CMC determination, which an inmate may appeal to DOCS counsel.  *See id.*  The Division of Classification and Movement determines an inmate's security classification.  *See id.*  Mr. Botsford states that his office determined Plaintiff's security classification based upon the criteria set forth in the DOCS Classification and Movement Manual.  *See id.* at ¶¶ 6-8.  Mr. Botsford also asserts that DOCS relied upon the pre-sentence report for the details of the criminal activity that led to Plaintiff's conviction and that, if Plaintiff disagrees with the contents of that report, he must address those objections to the New York City Department of Probation, the agency that prepared the report.  *See id.* at ¶ 9.  Finally, Mr. Botsford states that, due to the nature of Plaintiff's conviction, "he cannot receive a security classification lower than 'Medium 07,' and thus is ineligible for the 'Minimum' classification he desires."  *See id.* at ¶ 10.

Attached to Defendant McIntosh's affidavit is a copy of DOCS Directive 4790, which governs merit time, and a copy of her letter and Defendant Stiles' letter to Plaintiff, in which they explained to Plaintiff the actions that he needed to take to become eligible for merit time.[1] *See* Affidavit of Donita McIntosh, sworn to November 18, 2005 ("McIntosh Aff."), at ¶¶ 4, 6 & Exhibit "A." Specifically, in this case, Plaintiff is required to successfully complete the alcohol and substance abuse treatment program. *See id.* at ¶ 6. Defendant McIntosh communicated this requirement to Plaintiff in a June 22, 2005 Memorandum; and Defendant Stiles likewise communicated this requirement to Plaintiff in a September 20, 2005 Memorandum. *See id.* at Exhibits "B" & "C." Thus, according to Defendant McIntosh, neither Plaintiff's CMC status nor his security status affects Plaintiff's ability to earn merit time; rather, Plaintiff is not eligible for merit time because he has not completed the alcohol and substance abuse treatment program. *See id.* at ¶ 6.

**B.    Requirements for injunctive relief**

In this Circuit, the standard that a court must use when considering whether to grant a

---

[1] According to DOCS Directive 4790, merit time is an allowance against the minimum terms of a sentence that is granted to inmates who achieve

> significant programmatic objectives, have not committed any serious disciplinary infractions and have not filed any frivolous law suits. . . . When granted, merit time allowances enable inmates to appear before the Board of Parole for possible release on parole on their merit eligibility dates. A merit time allowance is a privilege to be earned by the inmate and no inmate has the right to demand or require that any such allowance be granted.

*See* Dkt. No. 31, McIntosh Aff., Exhibit "A."

request for injunctive relief is well-settled. As the Second Circuit noted in *Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992), the movant "must show (1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking the injunctive relief." *Id.* at 77 (citation omitted) (affirming district court's denial of inmate's request for preliminary injunction); *see also Roucchio v. LeFevre*, 850 F. Supp. 143, 144 (N.D.N.Y. 1994) (adopting Report-Recommendation of magistrate judge that recommended denial of an inmate's request for a temporary restraining order or a preliminary injunction). In the present case, because Plaintiff's motion for injunctive relief seeks substantially all of the relief he requests in this action, he must make a showing of "'**substantial** likelihood of success on the merits.'" *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988) (quotation omitted) (emphasis added); *see also Hogan v. Russ*, 890 F. Supp. 146, 150 (N.D.N.Y. 1995) (quotation omitted).

### 1. *Irreparable harm*

In this case, Plaintiff seeks, among other things, a change in his security classification and removal of his CMC status. However, because Plaintiff has no liberty interest in being designated to a particular security classification or in a particular CMC designation, the Court finds that Plaintiff has not demonstrated irreparable harm in this regard. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that inmate "has no legitimate statutory or constitutional entitlement [to a particular security classification] sufficient to invoke due process" (citations omitted)); *Mack v. Artuz*, No. 01 Civ. 11832, 2002 WL 31845087, *6-*8 (S.D.N.Y. Dec. 19, 2002) (holding that "'[a] prisoner's mere expectation of benefits associated with non-CMC status

does not amount to a statutory or constitutional entitlement sufficient to trigger due process protections'" (quotation omitted)).

### *2. Likelihood of success on the merits*

Even assuming that Plaintiff could show irreparable harm, the Court would still have to deny Plaintiff's motion for a temporary restraining order because he has failed to show a substantial likelihood of success on the merits of his underlying claims. Specifically, Plaintiff has failed to establish that he can succeed on the merits of his claims because he has not demonstrated that Defendants' classification of him as a CMC case or as a medium security risk will deprive him of any liberty interest triggering due process protections. *See Moody*, 429 U.S. at 88 n.9; *Mack*, 2002 WL 31845087, at *6-*8; *Pugliese*, 617 F.2d at 925.

### IV. CONCLUSION

Accordingly, for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for a temporary restraining order is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

Dated: January 19, 2006
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Chief United States District Court Judge