**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ALAN THOMAS,

                              Plaintiff,

    v.                                       No. 05-CV-638
                                              (FJS/DRH)

ANTHONY J. ANNUCCI, General Counsel; A. BABCOCK, S.C.C.; R. STILES, S.C.C.; MR. KNAPP, C.C.; THERESA KNAPP-DAVID, Dir. of Classification; RICHARD ROY, Inspector General, Dept. of Corrections; JUSTINE TAYLOR, Superintendent; SARA CAMPBELL, S.U. Teacher; and MS. McINTOSH, C.C.,

                              Defendants.

---

**APPEARANCES:**                            **OF COUNSEL:**

ALAN THOMAS
Plaintiff Pro Se
04-R-2782
Cayuga Correctional Facility
Post Office Box 1186
Moravia, New York 13118

HON. ANDREW M. CUOMO            DAVID L. FRUCHTER, ESQ.
Attorney General for the                Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Alan Thomas ("Thomas"), an inmate in the custody of the New York

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, nine DOCS employees, violated his constitutional rights under the Fourteenth Amendment. Am. Compl. (Docket No. 10). Presently pending is defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Docket No. 53. Thomas failed to respond. For the following reasons, it is recommended that defendants' motion be granted in all respects.

## I. Background

The facts are presented in the light most favorable to Thomas as the non-moving party. See Ertman v. United States, 165 F.3d 204, 206 (2d Cir. 1999).

On July 7, 2004, Thomas was admitted into custody at Ulster Correctional Facility ("Ulster"). Am. Compl. ¶ 20. Upon arrival, defendant Babcock changed Thomas' initial classification and referred him to the Inspector General to be considered for designation as a Central Monitoring Case ("CMC").[2] Id. ¶¶ 20-21. On August 10, 2004, defendant Roy designated Thomas a CMC. Id. ¶ 20. Thomas unsuccessfully appealed the designation to defendant Annucci, who confirmed the classification on April 21, 2005. Id. ¶¶ 25-26. Thomas also appealed these decisions administratively to defendants Knapp-David and Taylor. Id. ¶¶ 27-28.

On November 11, 2004, defendant Knapp denied Thomas' request for minimum security

---

[2]"CMC status indicates that an inmate requires close supervision; it does not preclude an inmate's transfer to any facility or assignment to any program, but it does require that any transfer be reviewed and approved by the DOCS Inspector General." Rivera v. Senkowski, 62 F.3d 80, 82 (2d Cir. 1995); see also N.Y. Comp. Codes R. & Regs. tit. 7, § 1000 et seq.

2

status.  Id. ¶ 23.  Thomas unsuccessfully appealed this denial, but Knapp's decision was affirmed by defendant Stiles on November 16, 2004.  Id. ¶ 23.  Thomas alleges that Knapp treated him differently than other new arrivals in the facility.  Id. ¶ 31.

Additionally, Thomas claims that "[f]rom July 6, through October 28, 2004 [he] was denied merit time program participation, dental care, medical diagnostic referrals, restrictive packeges [sic], commisary [sic] visits, law library access, monitored mail and phone calls."  Id. ¶ 29.  Specifically, on June 22, 2005, defendant McIntosh refused to credit Thomas with vocational program credit as earned merit time.  Id. ¶ 34.  Moreover, Thomas contends that "at all times relevant herein defendant[s] treated [him] differently than other inmates similarly situated . . . ."  Id. ¶ 30.

Lastly, Thomas asserts that on January 26, 2005, defendant Campbell retaliated against him by writing a false misbehavior report when Thomas "express[ed] himself in a non verbal manner," as an indication of his disappointment with the classroom component of the vocational assistance program.  Id. ¶ 33.  This action followed.

## II.  Discussion

In his complaint, Thomas alleges that his Fourteenth Amendment rights were violated when he was (1) designated a CMC, (2) denied minimum security classification, (3) denied merit time credit without any type of hearing, and (4) issued a false misbehavior report. Defendants claim that (1) Thomas fails to assert a cause of action with respect to his security classification, (2) there is no retaliation claim as the allegations are only conclusory, (3) Thomas has no constitutional right to merit time, (4) damages for emotional injury are barred without proof of an actual injury, and (5) Thomas' claims for injunctive relief are

3

moot.

## A. Legal Standard

"After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)." Allan v. Woods, No. 05-CV-1280 (NAM/GJD), 2008 WL 724240, at *1 (N.D.N.Y. Mar. 17, 2008) (citing Maggette v. Dalsheim, 709 F.2d 800, 801 (2d Cir. 1983)).  "The test for evaluating a [Fed. R. Civ. P.] 12(c) motion is the same as that applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998); Burke v. New York, 25 F. Supp. 2d 97, 99 (N.D.N.Y. 1998) (Munson, J.).

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim.  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, "a 'complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." Gilfus v. Adessa, No. 5:04-CV-1368 (HGM/DEP), 2006 WL 2827132, at *3 (N.D.N.Y. Sept. 30, 2006) (citing De Jesus v. Sears, Roebuck & Co. 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted)).  Thus, dismissal is only warranted if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of facts which would support his or her claim or entitle him or her to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

4

477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted).

### B. Failure to State a Claim

An action commenced pursuant to 42 U.S.C. § 1983 requires proof of the "deprivation of any right[], privilege[], or immunit[y] secured by the Constitution" or laws of the federal government.  42 U.S.C. § 1983.  Thus, no action lies under § 1983 unless a plaintiff has asserted the violation of a federal right.  See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 19 (1981).

### 1. Fourteenth Amendment

In this case, Thomas asserts that his constitutional rights were infringed when defendants refused to change his security classification, refused to transfer him to a minimum security prison, filed a retaliatory, false misbehavior report, and refused to credit him with merit time.  However, as a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001).  "Prisoners enjoy the

right not to be deprived of life, liberty or property without due process of law, but their rights are to be balanced with, and often tempered by, the needs of their special institutional setting." Malik v. Tanner, 697 F. Supp 1294, 1301 (S.D.N.Y. 1988) (citing Wolff v. McDonnell, 418 U.S. 539, 556 (1974)).

As to the transfer and classification of inmates,

> no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.

Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); see also Pugliese v. Nelson, 617 F.2d 916, 925 (2d Cir. 1980) (concluding "that a prisoner's mere expectation of benefits associated with non-CMC status does not amount to a statutory or constitutional entitlement sufficient to trigger due process protections.");[3] Mack v. Artuz, No. 01-CV-11832 (JSR/GWG), 2002 WL 31845087, at *7 (S.D.N.Y. Dec. 19, 2002).  Additionally, New York courts have held that "the enactment of the merit time legislation [did not] create[] a constitutionally protected liberty interest" as "[p]articipation in the . . . program is a privilege, not a right." See Scarola v. Goord, 698 N.Y.S.2d 60, 62 (3d Dep't 1999) (citations omitted).

---

[3] The Second Circuit also explains that "judicial intervention into the classification of prisoners for monitoring and control purposes would almost inevitably involve the federal courts in the day-to-day operations of our prison system, which are better left to the expertise of prison administration authorities." Pugliese, 617 F.2d at 925.  As the Supreme Court stated in Bell v. Wolfish, "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions [thus p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." 441 U.S. 520, 547 (1979).

Thus, Thomas has no rights protected by due process requirements surrounding his security classification, desire for transfer to a minimum security institution, or denial of merit time credits.  Therefore, Thomas has failed to state a claim under §1983 on these grounds because his complaint lacks the assertion of a federal right, privilege, or immunity.

Accordingly, defendants' motion for judgment on the pleadings is granted as to these claims.

### 2. False Misbehavior Report

Thomas alleges that defendants submitted a false misbehavior report in violation of his constitutional rights.  As discussed supra, an inmate has a right not to be deprived of a liberty interest without due process.  However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)).  "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v. Kelly, 854 F.2d 584, 588-90 (2d Cir. 1988)).

In order to state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. Id.  Conclusory allegations alone are insufficient. Id. (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.

7

1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

In this case, Thomas has failed to allege facts sufficient to support a retaliation claim. First, Thomas' conclusory allegations, absent something else, are insufficient to maintain the present claim. Second, Thomas does not allege that he was engaged in a constitutionally protected activity at the time of the misbehavior report. See Lee v. Gov. of State of New York, 87 F.3d 55, 58 (2d Cir. 1996) (finding no liberty interest for inmate participation in a temporary release program); Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) ("New York law does not give a prisoner 'any statutory, regulatory or precedential right to his prison job.'"). Reading the facts in the light most favorable to Thomas, he states that while he was participating in a class "training other inmate program assistance [sic]," he was given a false misbehavior report for non-verbally expressing his displeasure. Am. Compl. ¶ 33. However, Thomas does not allege that his participation in the program was revoked or that he was disciplined in any way. See Moody, 429 U.S. 88 n.9; Romer v. Morgenthau, 119 F. Supp. 2d 346, 358 (S.D.N.Y. 2000) (holding that "while revocation of work release has been held to implicate due process concerns, access to work release in the first place has not[; therefore], denial of work release has been held not to infringe upon a liberty interest.") (citations omitted). Without the allegation of a revocation, there has been alleged no deprivation of a liberty interest.

Therefore, defendants' motion as to that claim should be granted.

### 3. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under

the law.  Essential to that protection is the guarantee that similarly situated persons be treated equally.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." Myers v. Barrett, No. 95-CV-1534, 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997) (Pooler, J.). "Conclusory allegation[s] of discrimination, without evidentiary support or allegations of particularized incidents and absent allegations of discriminatory intent, do not state a valid claim and so cannot withstand a motion to dismiss." Collins v. Sovereign Bank, 482 F. Supp. 2d 235, 240 (Conn. 2007) (citing Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 470 (2d Cir. 2006)) (internal quotations omitted).

In this case, Thomas alleges that Knapp, McIntosh, and Stiles "treated [him] different than other inmates similary [sic] situated."  Am. Compl. ¶¶ 31, 34-35.  Even reading these statements in the light most favorable to Thomas, they are at best conclusory allegations which are insufficient to state a claim of discrimination.  Thomas has neither alleged nor do the facts give any indication as to what group of inmates were treated more favorably, how these defendants discriminated against him, what their intent was, or when these incidents occurred.

Therefore, the defendants' motion on this ground should be granted.

### C. Compensatory Damages

The Second Circuit has held that "to collect compensatory damages in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff must prove more than a mere violation of his

9

constitutional rights. He must also demonstrate that the constitutional deprivation caused him some actual injury." McCann v. Coughlin, 698 F.2d 112, 126 (2d Cir. 1983) (citations omitted). Thus, "[a]bsent a showing of causation and actual injury, a plaintiff is entitled only to nominal damages." Miner v. City of Glens Falls, 999 F.2d 655, 660 (2d Cir. 1993). Additionally, the Prisoner Litigation Reform Act states in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

In this case, Thomas has failed to allege, and there are no facts that can be liberally construed to indicate, any type of physical injury. Thus, these conclusory allegations, absent something more, are insufficient to entitle Thomas to compensatory damages due to sustained mental and emotional injuries.

Accordingly, the defendants' motion on this ground should be granted.

### D. Mootness

"Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a [live] case or controversy." Butler v. Dolce, No. 03-CV-608 (NPM), 2006 WL 3359311, at *2 (N.D.N.Y. Nov. 16, 2006) (citations and internal quotations omitted). In order "[t]o sustain . . . jurisdiction in the present case, it is not enough that a dispute [be] very much alive when suit was filed, or when review was obtained . . . ." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). Thus, "throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis, 494 U.S. at 477 (1990)).

In this case, Thomas seeks inter alia injunctive relief against the "Gouverneur [Correctional Facility] correctional Counseling staff to comply with [DOCS] directive[s] . . . ." Am. Compl. ¶ 37. Thomas was previously incarcerated at Gouverneur Correctional Facility. Thomas' transfer from Gouverneur Correctional Facility to Cayuga Correctional Facility renders this injunctive relief moot. Therefore, there is no live controversy and the Court no longer has jurisdiction over this claim for relief. See, e.g., Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility").

Accordingly defendants' motion on this ground should be granted.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for judgment on the pleadings (Docket No. 53) be **GRANTED** as to all claims and all defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 29, 2008
        Albany, New York

*David R. Homer*
United States Magistrate Judge